**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA CRISTINA BARUELO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 05 C 6659 |
| | ) |
| MICHAEL M. COMFORT, District Director, U.S. Citizenship and Immigration Services, | ) ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Maria Baruelo seeks to overturn a decision by the District Director of United States Citizenship and Immigration Services denying her application for adjustment of her immigration status to that of lawful permanent resident. For the reasons stated below, the Court reverses the decision of the District Director and remands the case to the agency for further proceedings.

**Facts**

Maria Baruelo ("Baruelo") is a native and citizen of the Philippines who was born on February 12, 1981. Administrative Record ("AR") 23. On August 4, 1997, Baruelo's mother Biani Baruelo ("Biani"), a lawful permanent resident of the United States, filed a petition with the Immigration and Naturalization Service ("INS") seeking to obtain an immigrant visa for Baruelo pursuant to section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2), on the ground that Baruelo was the child of a lawful permanent resident. AR 92.

Section 203 provides various "preference" categories for allocation of immigrant visas, with each category subject to numerical limits. The first preference is for unmarried sons or daughters of citizens. 8 U.S.C. § 1153(a)(1). The second preference category – the one under which Biani made the application for Baruelo – is for persons who are spouses or minor children of permanent resident aliens (category 2A) or unmarried sons or daughters, age twenty-one or over, of permanent resident aliens (category 2B). *Id.* § 1153(a)(2); *see also,* 8 U.S.C. § 1101(b)(1) (definition of "child").

The INS approved Biani's petition on November 21, 1997. AR 90. As of that date, Baruelo was sixteen years, nine months, and nine days old. The approval of the immigrant visa petition, however, did not mean that Baruelo was given a visa at that point. Evidently a separate application must be made for such a visa when one becomes available. *See* Def. Mem. at 5. Due to backlogs resulting from statutory limitations on the number of immigrant visas, an immigrant visa did not become available to Baruelo until nearly five years later, on November 1, 2002. *See* Def. Ex. 7, ¶ 7.[1] But by that time, Baruelo had already turned twenty-one; specifically, she was twenty-one years, eight months, and nineteen days old. As a result, Baruelo had "aged-out," meaning that she ordinarily would no longer be eligible for an immigrant visa pursuant to her mother's application.

In the meantime, in September 2001, Baruelo entered the United States on a non-immigrant visa. *See* AR 15. She evidently obtained this visa as a result of the Legal

---

[1] In immigration law lingo, Biani's visa petition filed on Baruelo's behalf "became current" on November 1, 2002. In her motion, Baruelo says a visa did not become available until November 2003. *See* Pl. Mot. for Summ. Judg. ¶ 9. But based on the Court's review of archived public records on the United States Department of State website, it appears the correct date is, in fact, November 2002, as stated in defendant's response. *See* http://www.travel.state.gov/visa/frvi/bulletin/bulletin_1357.html.

Immigration Family Equity Act ("LIFE Act"), adopted by Congress in December 2000. *See* Pub. L. 106-553, 114 Stat. 2762. This statute was adopted to protect legal immigrants' spouses and children who were unable to immigrate legally due to quota backlogs and processing delays. It created a non-immigrant visa category to permit temporary admission of aliens who were direct or derivative beneficiaries of pending visa petitions delayed due to backlogs, to permit them to remain in this country until they were able to immigrate. *See* 8 U.S.C. § 1101(a)(15)(V). Another provision of the LIFE Act directed the Attorney General to authorize an alien given a non-immigrant visa of this type to work in the United States during the period of authorized admission. 8 U.S.C. § 1184(q)(1)(A). The same provision stated that the period of authorized admission terminated thirty days after the denial of a petition to accord the alien second preference immigrant visa status as the child of a legal permanent resident under § 1153(a)(2)(A), the denial of the alien's application for an immigrant visa, or the denial of the alien's application for adjustment of her immigration status. *Id.* § 1184(q)(1)(B).

On September 24, 2003, Baruelo filed an I-485 application with United States Citizenship and Immigration Services ("CIS"), a successor agency to INS, seeking to adjust her immigration status to that of lawful permanent resident. On the application, Baruelo checked off a box stating that the basis for her application was that "am immigrant petition giving me an immediately available immigrant visa number has been approved." AR 15.

On June 1, 2005, CIS denied Baruelo's application for adjustment of status. AR 12. The District Director's decision letter quoted 8 C.F.R. § 204.2(a)(4). That regulation, as quoted in the decision letter, provides that if a child turns twenty-one before a visa is issued to the alien parent, a separate visa petition is required; that "the original priority date will be retained if the subsequent petition is filed by the same petitioner"; and that "[s]uch retention of priority date

3

will be accorded only to a son or daughter previously eligible as a derivative beneficiary under a second preference spousal petition." *Id.* After quoting the regulation, the decision stated that "[a]s you are now over the age of twenty-one, you do not qualify as a derivative beneficiary. In addition, no visa petition has been filed directly in your behalf. Accordingly, your application for adjustment of status is denied." *Id.*

In November 2005, Baruelo filed suit under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1361, seeking a determination that CIS's decision was contrary to law and that Baruelo was eligible for adjustment of her immigration status, and an order directing defendant Michael Comfort, District Director of CIS, to approve her application for adjustment of status.

On February 15, 2006, CIS issued an amended decision. AR 11. The amended decision, like the original decision, quoted 8 C.F.R. § 204.2(a)(4). After quoting the regulation, the amended decision stated that "prior to the visa becoming available, you were 21 years of age and you no longer meet [sic] the definition of a child as described in Section 101 of the Act. You do not qualify for the Child Status Protection Act of 2002 as you 'aged out' before August 06, 2002. You are no longer eligible for the classification sought therefore [sic], your application for adjustment of status must be and is hereby denied." *Id.*

In April 2006, removal proceedings were initiated against Baruelo on the ground that her non-immigrant visa had expired. AR 7-8. Baruelo moved to dismiss those proceedings, arguing that in considering her non-immigrant visa to be expired, the government was relying on a regulation that was contrary to the intent of Congress when it adopted the LIFE Act. *See* Pl. Ex. 13. The removal proceedings were terminated without prejudice on August 29, 2006. *See* Pl. Ex. A (attached to Pl's Resp. to Def's Cross-Mot. for Summ. Judg.).

4

## The Child Status Protection Act

As indicated above, a lawful permanent resident like Biani Baruelo may file a petition to accord lawful permanent resident status to certain categories of her relatives. Family-sponsored immigrants who are the relatives of lawful permanent residents are subject to numerical restrictions based on the nature of their relationship with the lawful permanent resident, as well as per-country numerical limitations. The relative is supposed to remain outside the United States while waiting for a visa, unless she qualifies for and obtains a non-immigrant visa – as Baruelo did. *See* Def. Mem. at 4.

A lawful permanent resident requests approval of a visa for a qualifying relative by filing a Form I-130 with CIS (in 1997, with the INS). *See* Def. Mem. at 5. Biani did this on behalf of Baruelo, her daughter. As stated earlier, the form was filed on August 4, 1997 and was approved on November 21, 1997.

The Secretary of State has the responsibility of administering the issuance of visas under the preference quota system. The Department of State issues a "visa bulletin" each month, reporting cutoff dates by preference category and country. Beneficiaries of approved visa petitions with a filing ("priority") date earlier than the cutoff date for their particular category and country are eligible for a visa number and can apply for an immigrant visa if abroad, or for adjustment of status to lawful permanent resident if already in the United States. *See* Def. Mem. at 5.

In the 1990's, "an enormous backlog of adjustment of status (to permanent residence) applications . . . developed at the INS." H.R. Rep. 107-45, 2002 U.S.C.C.A.N. 640, 641 (Apr. 20, 2001). As a result, child beneficiaries of visa applications often would turn twenty-one before the application was processed, requiring the applicant to shift into a lower preference

5

category and be placed "at the end of a long waiting list for a visa." *Id.* As a result, on August 6, 2002, Congress enacted the Child Status Protection Act ("CSPA"). *See* Pub. L. No. 107-208, 116 Stat. 927. Among other things, the CSPA amended 8 U.S.C. § 1153 by adding what is now subsection (h). This provision allows certain aliens to maintain the status of a child of a lawful resident alien for purposes of the 2A preference category even after turning twenty-one. Specifically, § 1153(h) provides that an alien's age for purposes of the 2A category is to be determined by subtracting the time that the petition for classification was pending from the alien's age at the time that a visa number becomes available. 8 U.S.C. § 1153(h)(1-2). In addition, the statute provides that if the alien is determined to be twenty-one or older after applying this calculation, the "petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition" – in other words, the date the original petition was filed. 8 U.S.C. § 1153(h)(3). This means that when a child beneficiary of a visa application turns twenty-one even after factoring in the CSPA's ameliorative age calculation, she does not end up "at the end of a long waiting list," and does not have to file a new petition, but rather keeps her original filing date even after being moved to a lower preference category.

## Discussion

Both plaintiff and defendant have moved for summary judgment. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, there does not appear to be any dispute about the material facts; the issues concern the application of the law to the facts.

1.      **Standard of review**

Under the Administrative Procedure Act ("APA"), a court reviewing an administrative agency's decision is to decide relevant questions of law, interpret statutory provisions as necessary, and set aside agency actions, findings, and conclusions that are (among other things) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The parties have provided the Court with precious little assistance in determining the standard of review applicable to the District Director's decision to deny Baruelo's application for adjustment of status. Baruelo has cited no authority regarding the standard of review. The District Director says that the standard is "abuse of discretion," but the cases he cites all involve denials of requests for types of relief that the law deems discretionary – which does not appear to be the case here. *See, e.g., Bal v. Moyer,* 883 F.2d 45, 47 (7th Cir. 1989); *Achacoso-Sanchez v. INS,* 779 F.2d 1260, 1264 (7th Cir. 1985).

The Court has conducted its own research to try to ascertain the standard for review of the denial of an application for adjustment of status. The cases the Court turned up, however, each involved review of a denial made by an immigration judge after an on-the-record hearing, which under the APA, specifically 5 U.S.C. § 706(2)(E), requires the standard of review to be whether the decision was supported by substantial evidence. *See, e.g., Carrillo-Gonzalez v. INS,* 353 F.3d 1077, 1078 (9th Cir. 2003).[2]

One way or another, however, it appears to the Court that the APA requires that the District Director's decision be upheld "as long as [he] considered relevant data under the correct

---

[2] The District Director has not suggested that Baruelo's challenge is improperly before this Court or that the denial of her application for adjustment of status had to be reviewed by an immigration judge or the Board of Immigration Appeals.

legal standards and offered a satisfactory explanation for [his] actions." *State of Wisconsin v. EPA,* 266 F.3d 741, 746 (7th Cir. 2001). *See generally Marsh v. Oregon Natural Resources Council,* 490 U.S. 306, 378 (1989) (in determining whether agency decision was "arbitrary or capricious," the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)).

**2.     Baruelo's contentions**

In challenging the District Director's decision, Baruelo focuses primarily on two alleged errors. First, she argues, the District Director acted arbitrarily and capriciously, and committed an error of law, in relying on 8 C.F.R. § 204.2(a)(4), which Baruelo says has nothing to do with the issues presented by her petition for adjustment of status. Second, Baruelo contends, the District Director acted arbitrarily and capriciously, and committed an error of law, in concluding that Baruelo did not qualify for protection under the CSPA. The District Director effectively concedes the first alleged error but says it had no impact on the decision. He argues that his interpretation of the CSPA is entitled to deference and should not be overturned. Alternatively, the District Director argues that even if his interpretation of the CSPA as inapplicable was wrong, Baruelo would not prevail even if the CSPA were applied to her case.

**3.     8 C.F.R. § 204.2(a)(4)**

In making his decision on Baruelo's application for adjustment of status – both the original decision and the amended decision issued after Baruelo filed this suit – the District Director relied on a regulation that its counsel now concedes had nothing to do with the issue the District Director was called upon to decide. Specifically, the District Director relied on 8 C.F.R. § 204.2(a)(4), which his counsel says "admittedly refers to a general area of the preference

category which does not directly relate to the precise statutory basis that applies to plaintiff Baruelo." Def. Mem. at 9. Defendant argues, however, that the inapplicability of the regulation had no impact on the decision in Baruelo's case.

The Court accepts defendant's concession of error; the regulation had nothing to do with the issues presented by Baruelo's application for adjustment of status. The Court cannot agree, however, with the District Director's argument that this had no impact on the outcome. In his amended decision, the District Director quoted a regulation that, if applicable, required a separate petition to be filed by a beneficiary who aged out and allowed retention of the original priority date only under limited circumstances. The CSPA, as the Court will discuss, provides exactly the opposite on both of these points.

In sum, there is no question that the District Director applied the wrong legal standard, and thus acted arbitrarily and capriciously and contrary to law, in relying on 8 C.F.R. § 204.2(a)(4) to deny Baruelo's application.

### 4. The CSPA

Defendant argues that the erroneous use of 8 C.F.R. § 204.2(a)(4) does not matter, because the District Director correctly determined that Baruelo did not qualify for the protection of the CSPA. The District Director's original decision – the one that had been issued at the time Baruelo filed this suit – did not even mention the CSPA. But in his amended decision, the District Director stated that Baruelo "do[es] not qualify for the Child Status Protection Act of 2002 as [she] 'aged out' before August 06, 2002." AR 11.

The District Director argues that the Court is required to defer to the District Director's construction of the CSPA. When a court has to deal with a question implicating an agency's construction of the statute which it administers, as is the case with CIS and the immigration

9

laws, *see, e.g.,* 8 U.S.C. § 1103(a)(1), the degree to which a court defers to the agency's interpretation is governed by application of the principles set forth in *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See also, INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

The first question under *Chevron* is whether "the statute is silent or ambiguous with respect to the specific issue" before the court. *Chevron*, 467 U.S. at 843. If the statute speaks to the issue and "the intent of Congress is clear, both this Court and the agency must give effect to that legislative intent." *Knutsen v. Gonzales*, 429 F.3d 733, 736 (7th Cir. 2005) (citing *Chevron,* 467 U.S. at 842-43).

If, conversely, a statute is ambiguous with respect to the specific issue, the Court must give some deference to the agency's interpretation of the statute. *Chevron*, 467 U.S. at 843. The degree of deference afforded an agency's interpretation of a statutory provision depends, in part, upon the procedure used by the agency to arrive at that interpretation. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *United States v. Mead Corp.*, 533 U.S. 218, 227-30 (2001). Agency decisions on statutory construction promulgated in the course of rulemaking and adjudication are afforded substantial deference under *Chevron*. *See Mead Corp.*, 533 U.S. at 230. But interpretations arrived at in a less formal manner may not warrant *Chevron*-style deference. *See Christensen,* 529 U.S. at 587; *Mead,* 533 U.S. at 234.

Congress has spoken directly on the issue of the applicability of the CSPA, and its plain language indicates, without ambiguity, that the statute indeed applies to Baruelo. When it enacted the CSPA on August 6, 2002, Congress specifically provided that the statute "shall take effect on the date of [its] enactment . . . and shall apply to any alien who is a derivative beneficiary or any other beneficiary of -- (1) a petition for classification under section 204 of the

10

Immigration and Nationality Act (8 U.S.C. 1154) approved before such date but only if a final determination has not been made on the beneficiary's application for an immigrant visa or adjustment of status to lawful permanent residence . . . ." Pub. L. 107-208, § 8(1). Under the plain language of this provision, Baruelo – contrary to the District Director's determination – "qualified" for protection under the CSPA. First, she was a beneficiary of a petition for classification under § 1154 that had been approved before August 6, 2002, the date the CSPA was enacted. Second, no final determination had yet been made on an application for an immigrant visa or for adjustment of her immigration status to that of lawful permanent residence. True, no such application had yet been filed by Baruelo, but the CSPA's applicability was not expressly limited to aliens with *pending* applications for adjustment of status.

The District Director appears to have read the CSPA as imposing an age requirement, namely, that to be protected by the CSPA, the alien must have been under twenty-one when the statute was enacted. No such requirement, however, can be found in the CSPA. Defendant has provided no basis for the Court to defer to an interpretation of a statute that, in effect, adds threshold requirements for its application that Congress did not see fit to impose. Among other things, the District Director's interpretation of the CSPA is not embodied in any sort of regulation, and defense counsel has cited no other interpretive material of the type that might appropriately warrant *Chevron*-style deference.

In her reply brief, Baruelo directed the Court's attention to a CIS internal memorandum that purports to interpret the CSPA. *See, e.g.*, Memorandum for Regional Directors, Immigration Services Division, Office of International Affairs (Feb. 14, 2003) *available at* http://www.uscis.gov/files/pressrelease/CSPA2_pub.pdf. According to this memorandum, the CSPA primarily benefits aliens "who aged out on or after August 6, 2002." The memorandum

11

takes the position that the CSPA applies to aliens who turned twenty-one before August 6, 2002 only if they had an application for adjustment of status or were the beneficiary of a petition for alien relative that was pending on that date. *Id.* at 2, ¶ 1.

Defendant does not contend, and thus the Court cannot find, that this internal memorandum informed the District Director in making his decision in Baruelo's case (defendant does not argue that it had any impact). To some extent, the District Director's decision seems consistent with the memorandum, in that both the decision and the memorandum take the position that the CSPA protects those who aged out on or after August 6, 2002. On the other hand, unlike the internal memorandum, the District Director's decision does not address the potential applicability of the CSPA to aliens who aged out before the statute's enactment, but rather takes the position – which the Court has already found untenable – that the statute does not apply to those who aged out earlier.

But assuming the internal memorandum somehow impacted the District Director's decision – though we again note that defendant has not cited it in his summary judgment materials – the memorandum does not warrant deference under *Chevron*. "Interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law, do not warrant *Chevron*-style deference." *See Christensen*, 529 U.S. at 587; *Mead,* 533 U.S. at 234.

Agency interpretations may deserve some deference even when there is no basis for *Chevron*-style deference. As the Supreme Court stated in *Mead,* "*Chevron* did nothing to eliminate [the] holding [of *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944)] that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of

uniformity in its administrative and judicial understandings of what a national law requires." *Mead,* 533 U.S. at 234 (quoting *Skidmore,* 323 U.S. at 139) (internal citations omitted). Under *Skidmore,* the weight given to the agency's interpretation depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Skidmore,* 323 U.S. at 140.

The interpretation of the CSPA contained in the internal memorandum, like that implicit in the District Director's amended decision in Baruelo's case, is entirely unpersuasive. The Court has already discussed the absence of a basis to impose an age requirement for protection under the CSPA. But the internal memorandum does not stop there; it also imposes, for those who aged out before the statute's enactment, an additional requirement of having an adjustment application or alien relative petition on file. This, too, is baseless. The Ninth Circuit has concluded, in a different context, that the CSPA's effective date provision "expanded the class of petitioners to whom relief would be provided beyond the class of petitioners … whose applications were pending before the agencies involved." *Padash v. INS*, 358 F.3d 1161, 1172 (9th Cir. 2004). As discussed in *Padash,* the CSPA, as originally conceived, contained a broad retroactivity provision stating that it would apply to all petitions filed "*before, on, or after* the date of the enactment of this Act." H.R. 1209, 107th Cong. § 2(b) (as introduced in House, Mar. 26, 2001) (emphasis added). The Department of Justice proposed amending the bill to limit retroactivity based on the date the beneficiary aged out. H.R. Rep. No. 107-45, at 6-7, *reprinted in* 2002 U.S.C.C.A.N. 644. The House declined to follow that approach and instead amended the bill so that it would apply to individuals with applications or petitions pending before the agency *on or after* the date of enactment. H.R. 1209, 107th Cong. § 2(b) (as referred to Senate,

13

June 7, 2001). Finally, the Senate introduced the three-pronged retroactivity provision found in the final version of the CSPA. H.R. 1209, 107th Cong. § 8 (Engrossed Amendment as Agreed to by Senate, June 13, 2002). Importantly, the Senate *added* section 8(1), which made the statute applicable to all whose applications (including those for adjustment of status) had not been finally determined at the date of enactment. *Id.* As the Ninth Circuit recognized, "only if provision (1) is understood to expand coverage beyond that afforded by the amended House bill, can the Act be read so as to give substantive content to that provision … ." *Padash*, 358 F.3d at 1172.

In sum, neither a filing requirement nor an age requirement is apparent from the language of the CSPA or its legislative history. For these reasons and those discussed earlier, CIS's interpretation of the CSPA to include both a filing requirement and an age requirement is unpersuasive and entitled to little deference. *See NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 721 (2001) (declining to enforce agency's interpretation of statute because it contradicted the statute's text and structure); *Knutsen*, 429 F.3d at 740 (refusing to accord deference to an agency's interpretation of the Immigration and Nationality Act because the statutory provision was not ambiguous and the agency's interpretation was not reasonable).

For these reasons, the Court concludes that the District Director's decision that Baruelo's application should be denied on the ground that the CSPA did not apply to her was arbitrary and capricious, an abuse of discretion, and contrary to law.

**5.    Defendant's alternative argument**

In his cross-motion for summary judgment, the District Director argues that even if the CSPA applied to Baruelo, she would not qualify as a "child," and thus the decision to deny her application for adjustment of status was ultimately correct. To support this argument, the

District Director submits an affidavit from a District Adjudications Officer in the Chicago District of CIS, who evidently looked at the file while the present lawsuit was pending, after the District Director made the decisions that Baruelo challenges. This official concludes that "even with applying the CSPA to her, Ms. Baruelo was still well over 21 years of age when she filed her adjustment application." Def. Ex. 7, ¶ 10.

The Court does not believe it is appropriate to consider this after-the-fact, outside-the-record submission to uphold the agency's determination in Baruelo's case. A court may only uphold agency decisions on the reasons stated by the agency at the time the decision was made, not *post hoc* rationalizations provided by counsel when the matter is on review. See *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."); *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-69 (1962) ("The courts may not accept . . . counsel's post hoc rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . ."). This is consistent with the fundamental principles of administrative law that an administrative agency must give a rational explanation for its resolution of a dispute (otherwise, a reviewing court cannot determine whether the decision was reasoned), *see, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983); *Schurz Communications, Inc. v. FCC*, 982 F.2d 1043, 1049 (7th Cir. 1992), and that a reviewing court is "not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Gonzales v. Thomas*, 126 S. Ct. 1613, 1615 (2006) (internal quotations and citations omitted).

The Court acknowledges that the harmless error doctrine may apply in the context of

review of administrative decisions, including immigration cases involving adjustment to status. *See Singh v. Gonzalez*, 404 F.3d 1024, 1028 (7th Cir. 2005). For example, agency decisions have been upheld despite a failure to consider relevant evidence or consideration of inadmissible evidence. *See, e.g., United States v. Dikeocha*, 218 F.3d 706, 711 (7th Cir. 2002) (where the record reflected more than sufficient evidence to support the agency's decision even without the inadmissible evidence improperly considered by the agency); *Singh*, 404 F.3d at 1028 (where the petitioner likely could not overcome the overwhelming evidence that supported the board's decision). But by the same token, a court should not make, in the first instance, a substantive determination regarding whether to grant immigration relief in the first instance. *Kay v. Ashcroft*, 387 F.3d 664, 677 (7th Cir. 2004). Generally speaking, the appropriate course in a situation like this one is to remand the case to the agency for further consideration. *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002).

In *Padash*, the agency maintained that the CSPA did not apply to the petitioner because a "final determination" had been made on his case prior to August 6, 2002, the statute's effective date. *Padash*, 358 F.3d at 1168. The court disagreed, concluding that the determination that had been made was not final. *Id.* The Court therefore determined that the CSPA applied to the petitioner. It remanded the case to the agency to determine whether the petitioner was eligible for an adjustment of status. *Id.* ("[I]f the [CSPA] applies to him, the BIA's decision to deny his petition on the basis of his age must be vacated and the case remanded for further proceedings"). This Court will follow the same course in Baruelo's case.

In this regard, the Court also notes that even if recalculation of Baruelo's age under the CSPA would not entitle her to immediate adjustment of her status, the statute unequivocally provides that the appropriate next step is not denial of her application, but rather conversion of

16

the application to the appropriate category – in Baruelo's case, preference category 2B. *See* 8 U.S.C. § 1153(h)(3). The District Director appears to have acted contrary to the CSPA's unambiguous directive in simply denying Baruelo's application rather than converting it as the law required. To be sure, the waiting list for category 2B applicants from the Philippines has taken longer to clear than the list for category 2A applicants: as of December 27, 2006, the cutoff date is September 8, 1996 – still about eleven months too early to benefit Baruelo. But because there is no currently pending removal proceeding involving Baruelo, she is still in this country and not about to be kicked out. Under the circumstances, there would seem to be a rather palpable difference between denial of her application – the ruling made by the District Director – and conversion of her application to a different category. Among other things, denial of her application would appear to require Baruelo to file a new application and go to "the end of a long waiting list" for a visa – exactly what Congress sought to avoid in adopting the CSPA.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [docket no. 19] and denies defendant's cross-motion for summary judgment [docket no. 25]. The Clerk is directed to enter judgment reversing the decision of the District Director and remanding the case to the agency for further proceedings consistent with the decision in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 29, 2006